UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
DR. MUHAMMAD,

           Plaintiff,

           -against-

ANTHONY J. ANNUCCI, et al.,

           Defendants.
------------------------------------------------------------x

No. 19-CV-3258 (GBD) (OTW)

**REPORT & RECOMMENDATION**

**ONA T. WANG, United States Magistrate Judge:**

**TO THE HONORABLE GEORGE B. DANIELS, United States District Judge,**

I. **Introduction**

Plaintiff Dr. Muhammad ("Plaintiff")[1] brings this action against Defendants New York State Department of Corrections and Community Supervision ("DOCCS"), Anthony J. Annucci, William Keyser, Gary Sipple, and Sergeant Rohan (collectively "Defendants"), alleging that Defendants' refusal to permit him to use his handmade walking cane (or use a substitute cane provided by the prison) while visiting an inmate at Sullivan Correctional Facility violated the American with Disabilities Act ("ADA"). Defendants have now moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). (ECF 20). For the following reasons, I recommend that Defendants' motion be GRANTED, but that Plaintiff be granted leave to file an amended complaint.

---

[1] Plaintiff does not provide his first name in any of his filings.

II. **Background**[2]

On December 9, 2017, Plaintiff, a 67-year-old with an "impaired" right leg, attempted to visit a prisoner incarcerated at Sullivan Correctional Facility in Fallsburg, New York. Complaint ("Compl.") (ECF 1) ¶¶ 9, 17-18. At the facility, Plaintiff was not permitted to use his handmade cane. Compl. ¶ 2. Defendant Rohan acknowledged to Plaintiff that the prison had substitute canes for visitors, but refused to provide one for Plaintiff. Compl. ¶ 3. Although Plaintiff requested that Defendant Rohan contact his supervisors, either the Chief of Security or the Superintendent of the facility, Defendant Rohan again refused. Compl. ¶¶ 5, 20.

Plaintiff filed his complaint on April 11, 2019, alleging that this purported ADA violation caused him migraine headaches and depression. (ECF 2). Plaintiff seeks a declaratory judgment that Defendants violated the ADA; compensatory and punitive damages; and attorney's fees. Compl. at 7. Defendants moved to dismiss the complaint, arguing that Plaintiff failed to properly serve Defendants, Plaintiff lacks standing to pursue relief against Defendants, and the complaint failed to state a valid claim for relief. (ECF 20).

III. **Discussion**

A. **Legal Standard**

1. **Rule 12(b)(1)**

A Rule 12(b)(1) dismissal is appropriate "if the court 'lacks the statutory or constitutional power to adjudicate it.'" *Scroggins v. Scroggins*, No. 15-CV-9524 (PAE), 2017 WL 1047356, at *3 (S.D.N.Y. Mar. 16, 2017) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790

---

[2] These facts are drawn from the Complaint, which are presumed true for purposes of this motion. *See Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012).

F.3d 411, 416–17 (2d Cir. 2015)). In resolving a 12(b)(1) motion to dismiss, the complaint's allegations are accepted as true, but the Court may consider "materials outside the pleadings." *McDermott v. N.Y. Metro LLC*, 664 F. Supp. 2d 294, 298 (S.D.N.Y. 2009).

### 2. Rule 12(b)(2)

A Rule 12(b)(2) motion shall be granted where the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). Where a Rule 12(b)(2) motion is raised on the basis of the pleadings, the plaintiff only bears the burden of making a "prima facie showing" of jurisdiction through factual allegations, either in the pleadings or through supporting affidavits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). All such allegations shall be viewed "in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

### 3. Rule 12(b)(5)

Dismissal under Rule 12(b)(5) shall be granted for "insufficient service of process." On a Rule 12(b)(5) motion, the plaintiff bears the burden of "proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010). Similar to a motion for dismissal under Rule 12(b)(1), the Court can, and should, consider matters outside the pleadings to determine whether the defendant(s) was properly served. *Beatie and Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 384 (S.D.N.Y. 2006). Although proceeding *pro se* does not excuse one from the procedural requirements for service, the Court may, in its discretion, permit an extension of time to effectuate proper service. *Harper v. NYC Admin. for Children's Servs.*, No. 09-CV-2468 (JGK), 2010 WL 23328, at *2 (S.D.N.Y. Jan. 5, 2010).

**4.     Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss must be granted where the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a motion to dismiss, the Court is limited to the complaint's factual allegations, documents attached to the complaint, matters of judicial notice, and documents which the plaintiff relied on in filing the complaint. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). If the parties present extrinsic evidence, the Court shall either exclude consideration of those documents or convert the motion to a motion for summary judgment. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). If the latter, the parties should be permitted the opportunity to conduct discovery and supplement the evidentiary record as contemplated by Federal Rule of Civil Procedure 56. *Id*.

Where, as here, the plaintiff is proceeding *pro se*, the complaint is to be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This includes drawing all reasonable inferences in the plaintiff's favor and reading the allegations to "raise the strongest claims that the allegations suggest." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 282 (S.D.N.Y. 2011). Although the Court accepts the plaintiff's factual allegations as true when deciding a motion to dismiss, the Court does not need to accept "labels and conclusions" or "assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

B. **Analysis**

1. <u>ADA Claim[3]</u>

    a. <u>Individual Capacity</u>

Title II of the ADA[4] does not permit "individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Sci. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001). In the complaint, Plaintiff names the defendants both in their individual and official capacities. (ECF 1). Accordingly, Plaintiff's claims against Defendants Annucci, Keyser, Sipple, and Rohan in their individual capacity should be dismissed under Rule 12(b)(6).[5]

    b. <u>Monetary Relief</u>

Monetary damage claims against the State of New York, and, by extension, its officials sued in their official capacity, are generally barred by the Eleventh Amendment and the doctrine of sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Although Congress made clear that the Eleventh Amendment does not shield states from ADA liability, 42 U.S.C. § 12202, the Second Circuit in *Garcia* held that full abrogation of state sovereign immunity for ADA claims exceeded Congress's authority under the Fourteenth Amendment.

---

[3] Plaintiff lists his second cause of action as "intentional infliction of emotional distress" ("IIED") under the ADA. Compl. ¶ 24. As there is no provision in the ADA regarding IIED and Plaintiff made clear that his case is solely under the ADA, I will construe this section of the complaint as a description of injuries rather than a separate cause of action for an IIED state law claim. To the extent that Plaintiff also references 42 U.S.C. §1983, he does so only as its function as the "implementing regulation[]" of the ADA, and does not assert that his ADA claim also constitutes an independent §1983 claim against Defendants. Compl. ¶ 1; *see also EC ex rel. RC v. County of Suffolk*, 882 F. Supp. 2d 323, 355 (E.D.N.Y. 2012) ("an ADA action may not be brought pursuant to 42 U.S.C. § 1983").

[4] Because Plaintiff is bringing a discrimination disability claim against a state government, as opposed to a public accommodation, he is bringing suit under Title II of the ADA. *See Hallett v. New York State Dep't of Corr. Servs.*, No. 99-CV-5853 (LTS) (AJP), 2006 WL 903200, at *4 (S.D.N.Y. Apr. 7, 2006) ("Title II applies to state prisons").

[5] Courts in this Circuit are split over whether individual defendants can even be named in their official capacity in an ADA suit. *See Monroe v. Gerbing*, No. 16-CV-2818 (KMK), 2017 WL 6614625, at *15 (S.D.N.Y. Dec. 27, 2017) (noting the issue is currently "unsettled" in this Circuit). Because I recommend that the claims against the individual defendants be dismissed on separate grounds, I need not reach this issue.

*Garcia*, 280 F.3d at 110. Instead, *Garcia* limited monetary claims against the State for Title II claims to cases showing that the "violation was motivated by discriminatory animus or ill will based on the plaintiff's disability." *Id*. at 112.

The Supreme Court subsequently held that Title II permissibly abrogated state sovereign immunity to the extent it covered "conduct that actually violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006). After *Georgia*, courts in this Circuit have split over whether *Georgia* or *Garcia* is now the proper standard by which to evaluate Title II damages claims against the State. *See Dean v. Univ. at Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178, 194 (2d Cir. 2015) (collecting cases). Defendants argue that whether under *Georgia* or *Garcia*, their alleged conduct does not violate the Fourteenth Amendment, and Plaintiff failed to allege any discriminatory animus or ill will motivating their conduct. (ECF 21 at 14-15).

Regardless of the test applied, Plaintiff has not pleaded sufficient facts to establish a right to seek monetary damages. Courts following the *Georgia* test permit monetary damages where the Title II violation also constitutes the "violation of a fundamental right." *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 522 (2010). To determine this, the Court first looks at whether "aspects of the State's alleged conduct violated Title II." *Georgia*, 546 U.S. at 159. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff alleges that he has an "impaired" right leg, requiring the assistance of a cane to walk. Compl. ¶ 17. Because Defendants do not contest that Plaintiff is disabled, it will be

assumed for purposes of this motion that Plaintiff is a "qualified individual." *See* 42 U.S.C. § 12102. The ADA "unmistakably" applies to state prisons, including DOCCS. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 75 (2d Cir. 2016).

The primary issue then is whether the alleged violation was because of Plaintiff's disability. Construing the complaint in the light most favorable to Plaintiff, the complaint alleges that (1) Defendants discriminated against Plaintiff by refusing to let him use his handmade cane and (2) Defendants discriminated against Plaintiff by rejecting Plaintiff's request for a substitute cane that was readily available for Defendants to offer.[6] Compl. ¶¶ 18-19.

On the first point, Plaintiff has not made any attempt to show that the ADA requires that he be allowed to use his own handmade cane in the prison. *Cf. Thornburgh v. Abbott*, 490 U.S. 401, 407-8 (1989) ("this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world"). Because DOCCS possessed substitute canes for visitors to use, the rejection of Plaintiff's request to use his own handmade cane did not preclude Plaintiff from participating in DOCCS's services, *i.e.*, visiting an inmate. Compl. ¶ 19. Plaintiff did not allege that the substitute canes would be an inadequate replacement for—or indeed, any different from—his handmade cane. *See Wright*, 831 F.3d at 75 (vacating summary judgment for defendant where the plaintiff alleged that the alternative accommodation failed to allow him to move freely). Nor was the failure to allow the handmade cane a failure to provide a reasonable accommodation. *See McElwee v. County of Orange,* 700 F.3d 635, 641 (2d Cir. 2012)

---

[6] Although Plaintiff does not allege that this specific act constituted an ADA violation, in determining if a *pro se* litigant has sufficiently stated a claim, "the court's imagination should be limited only by [Plaintiff's] factual allegations, not by the legal claims set out in his pleadings." *See Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).

7

(noting that a reasonable accommodation does not mean "provid[ing] a disabled individual with every accommodation he requests or the accommodation of his choice"). Although Plaintiff makes the conclusory assertion that the refusal to permit his handmade cane was due to an intent to discriminate against him based on his disability, the facility's having "substitute prison canes, crutch's [sic] and wheelchairs for visitors" contradicts that assertion. Compl. ¶¶ 18-19. Accordingly, Plaintiff's inability to use his own handmade cane does not state a Title II claim and cannot be the basis for monetary damages.

Defendant Rohan's refusal to provide Plaintiff with a substitute cane, however, raises a different question.[7] Plaintiff is not claiming that the ADA required the prison to offer canes. Here, the Sullivan Correctional Facility possessed substitute, and assumedly pre-approved, canes; they simply refused to provide one to Plaintiff.[8] *See Wright*, 831 F.3d at 78 (looking to DOCCS's stated reason for refusing the requested accommodation); *Monroe v. New York State Dep't of Corr. and Cmty. Supervision*, No. 16-CV-2818 (KMK), 2019 WL 4688665, at *10 (S.D.N.Y. Sept. 25, 2019) (finding *prima facie* ADA claim made where plaintiff alleged prison's prohibiting his use of a cane prevented him from accessing and being able to "navigate to" activities non-disabled inmates could access). Reading the complaint in the light most favorable to Plaintiff, refusing Plaintiff's request for a substitute cane, in combination with refusing him use of his

---

[7] Plaintiff also alleges that Defendant Rohan failed to read a letter from Plaintiff's doctor and failed to contact either the Chief of Security or the Superintendent. Plaintiff does not plead that this conduct was motivated by a discriminatory intent, or that this conduct was what prevented him from visiting the inmate, or that failure to so act was a failure to provide reasonable accommodation. Therefore, those two acts cannot form the basis of a Title II claim.

[8] Plaintiff alleges that Defendant Rohan denied Plaintiff's request for a substitute cane but does not allege that Defendants Annucci, Keyser, or Sipple had any involvement in denying Plaintiff's request. Indeed, Plaintiff acknowledges that when he requested that Defendant Rohan contact Defendant Keyser, Defendant Rohan refused. Compl. ¶ 5. Although Plaintiff has not made clear the basis for liability for Defendants Annucci, Keyser, or Sipple, Defendants do not challenge that point, and thus I do not need to address the issue.

own cane, prevented Plaintiff from having "meaningful access" to the visiting room, a privilege freely afforded to non-disabled visitors. Accordingly, Defendant Rohan's refusal to provide Plaintiff with a substitute cane thus on its face presents an ADA claim. *See Morales v. New York*, 22 F. Supp. 3d 256, 269–70 (S.D.N.Y. 2014) (defining disability discrimination under the ADA as "fail[ing] to make a reasonable accommodation that would permit the disabled individual to have access to, and take meaningful part in, public services.")

Under the next step of the *Georgia* analysis, the Court must consider whether the ADA violation also violated the Fourteenth Amendment, which is a much closer question. *Georgia*, 546 U.S. at 159. Plaintiff does not allege that Defendants' conduct violated any of his constitutional rights. Nor is it clear that denial of the ability to visit a non-family member in prison rises to the level of a constitutional deprivation. *See, e.g., Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003) (questioning whether the First Amendment right to association extends even to familial visits to inmates). An Equal Protection Clause violation arises when the plaintiff is "treated differently [] [from] others similarly situated as a result of intentional or purposeful discrimination." *See Phillips*, 408 F.3d at 129. A general prohibition against all canes likely results in disabled visitors experiencing greater hardship in entering the visiting room than non-disabled visitors. The Supreme Court has held, however, that in the context of ADA claims, the Equal Protection Clause does not require states to offer special accommodations based on disability "so long as their actions toward such individuals are rational," even if the failure to accommodate may be seen as "hardhearted[]." *See Board of Trustees v. Garrett*, 531 U.S. 356, 367 (2001); *see also Goonewardena v. New York*, 475 F. Supp. 2d 310, 325-26 (S.D.N.Y. 2007) (applying rational basis review to ADA claim because "[t]he disabled are not a suspect class for

9

purposes of the Fourteenth Amendment"). Prohibiting canes in a prison is grounded in security concerns, which would be a rational justification in light of a cane's potential repurposing as a weapon or to hide contraband. *Cf. Security and Law Enf't Emps. v. Carey*, 737 F.2d 187, 202-03 (2d Cir. 1984) (acknowledging the "unique" focus needed by prisons on "security dangers" and contraband). This then leaves Plaintiff's narrower claim of Defendants' refusal to issue a substitute cane. Refusing a substitute cane, which assumedly has been cleared to satisfy any safety concerns, has no rational relationship to a stated government interest. Being refused a substitute cane, however, was not alleged to be a differential treatment. Other than the conclusory allegation that Defendants conspired to discriminate against him, Plaintiff does not allege in the complaint that he was denied use of the substitute cane on account of his disability[9] or that similarly situated individuals were permitted use of substitute canes. *See Jarrach v. Sanger*, No. 08-CV-2807 (SJF) (ARL), 2010 WL 2400110, at *8 (E.D.N.Y. June 9, 2010) ("Conclusory allegations of selective treatment are insufficient to state an equal protection claim."). As a result, the ADA violation does not rise to the level of a violation of the Fourteenth Amendment.

In the absence of a constitutional violation, I find no reason to expand the scope of Congress's abrogation of sovereign immunity to include the specific conduct of refusal to accommodate the disability needs of a visitor to a prison. *See Georgia*, 546 U.S. at 159 (describing that in the absence of a Fourteenth Amendment violation, the Court must determine whether Congress's reach to "that class of conduct is nevertheless valid"); *Castells v. Fisher*, No. 05-CV-4866 (SJ), 2007 WL 1100850, at *5 (E.D.N.Y. Mar. 24, 2007) (suggesting that

---

[9] Indeed, Plaintiff later suggests that Defendant Rohan's refusal was racially motivated. (ECF 38).

10

lack of an infringed fundamental right "preclude[s] any further inquiry" into the validity of attempted abrogation of sovereign immunity). The U.S. Supreme Court has held that without a constitutional violation, Title II may be a valid abrogation of sovereign immunity when congruent and proportional to remedy a "history and pattern of unequal treatment." *See Tennessee v. Lane*, 541 U.S. 509, 530 (2004). Unlike the well-documented history of unequal treatment towards the disabled in regards to court services, *see id.* at 525, I am unaware of a history of unconstitutional treatment of disabled visitors to prisons.[10] *Cf. Blackburn v. Snow*, 771 F.2d 556, 563 (1985) (recognizing that visitors to prisons lack "the full panoply of rights they normally enjoy"). Accordingly, the ADA claim fails the *Georgia* test and precludes Plaintiff from seeking monetary damages under that standard.

Similarly, under the *Garcia* test, Plaintiff has not alleged a "discriminatory animus or ill will based on the plaintiff's disability." *Garcia*, 280 F.3d at 112. Although Plaintiff includes the conclusory allegation that Defendants discriminated against Plaintiff, *see* Compl. ¶¶ 2, 25, Plaintiff does not allege any facts indicating that the refusal to issue him a substitute cane was motivated by his disability. *See Russell v. New York*, No. 18-CV-8543 (VSB), 2019 WL 4805687, at *5 (S.D.N.Y. Sept. 30, 2019) ("Although Plaintiff broadly asserts that Defendants 'intentionally discriminated against Plaintiff . . .,' such vague, unsupported allegations are insufficient to establish the discriminatory animus necessary to abrogate Defendants' sovereign immunity"); *Holly v. Cunningham*, No. 15-CV-284 (KMK), 2016 WL 8711593, at *5 (S.D.N.Y. June 17, 2016)

---

[10] This is in contrast to many ADA prisoner claims, where the Title II violation also implicates constitutional concerns, such as an Eighth Amendment violation or violation of due process. *See, e.g., Bolmer v. Oliveira,* 594 F.3d 134, 149 (2d Cir. 2010); *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 413 (S.D.N.Y. 2006). Because visitors to prisons are not themselves incarcerated and/or stripped of their liberty, such constitutional concerns would likely be less common.

(precluding monetary damages for ADA claims "in the absence of anything other than conclusory allegations"). This stands in contrast to the cases in which courts have permitted ADA monetary damages claims to proceed. *See, e.g., Monroe,* 2019 WL 4688665, at *10 (noting that denial of access to services may violate the ADA but is not sufficient by itself to find animus or ill will); *Keitt v. New York City*, 882 F. Supp. 2d 412, 455 (S.D.N.Y. 2011) (finding animus alleged where plaintiff's teacher instructed him to stop requesting accommodations "because the prison does not provide such to learning disabled dyslexic inmates" and threatened the plaintiff for failing to "keep up with other students"); *Olson v. State of New York*, No. 2:04-CV-419 (ENV) (MLO), 2007 WL 1029021, at *8 (E.D.N.Y. Mar. 30, 2007) (finding animus alleged where the plaintiff's negative evaluations only started after his supervisors learned of his disability). Accordingly, because Plaintiff's claim fails both the *Georgia* and *Garcia* tests, I recommend dismissal of the monetary claims against Defendants under Rule 12(b)(6).[11] Because the ADA does not allow for punitive damages in private suits, Plaintiff's claims for punitive damages should also be dismissed on the same basis. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

    c. <u>Equitable Relief</u>

Plaintiff seeks both declaratory and injunctive relief. Compl. ¶ 5 and at 7. Defendants move to dismiss Plaintiff's request for equitable relief on the grounds that (1) Plaintiff lacks

---

[11] Plaintiff argues that Defendants' motion to dismiss covers factual issues outside the scope of the complaint and requests leave to conduct discovery. (ECF 30 ¶¶ 22-24). As described above, Defendants' claims are limited to the factual allegations in the complaint, and regardless, I do not rely on any such evidence in making my recommendation as to dismissal under Rule 12(b)(6). Therefore, there is no need to convert Defendants' motion to dismiss into one for summary judgment, and I recommend finding that discovery prior to resolution of Defendants' motion to dismiss is unnecessary. *See* Fed. R. Civ. P. 12(d) (only requiring conversion to motion for summary judgment if the Court relies on "matters outside the pleadings").

standing to seek such relief and (2) Plaintiff's failure to notify DOCCS of the need for future reasonable accommodation precludes any equitable relief. (ECF 21 at 16-17).

As an initial matter, Title II of the ADA contains no statutory standing requirement, meaning that any standing analysis would concern whether Plaintiff has constitutional standing. *See Transport Workers Union v. New York City Transit Auth.*, 342 F. Supp. 2d 160, 166 (S.D.N.Y. 2004). To have Article III standing, a plaintiff must show (1) an "actual or imminent" concrete injury, (2) a causal connection between the injury and the alleged violation, and (3) that it is "likely" that the requested relief will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This has been interpreted by the Second Circuit in ADA cases to require:

> (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [location] to plaintiff's home, that plaintiff intended to return to the subject location.

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). Defendants do not argue, however, that Plaintiff lacks standing to bring *any* claim against Defendants, only that he lacks standing to seek injunctive relief. (ECF 21 at 11). To have standing, a party seeking injunctive relief must show "*both* a likelihood of future harm *and* the existence of an official policy or its equivalent." *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004). Citing a past injury is not enough. *Id*. at 215.

Defendants argue that Plaintiff's allegation of one instance of a violation is insufficient to merit injunctive relief. (ECF 21 at 11-12).[12] I agree. The complaint contains no claim that

---

[12] Defendants alternatively argue that Plaintiff's failure to allege that he attempted to work with DOCCS "to obtain a reasonable accommodation" for future visits "undercuts" Plaintiff's claims for equitable relief "on their merits." (ECF 21 at 17). The cases cited, however, by Defendants all relate to Title I employee-employer claims, and Defendants have not otherwise provided any authority that engaging with DOCCS is a prerequisite to surviving a

13

Plaintiff is a repeat visitor to Sullivan Correctional Facility or that he ever intends on visiting that prison, or any DOCCS facility, in the future. There is also nothing in the complaint to support the belief that the alleged violation will continue. Plaintiff acknowledges that Sullivan Correctional Facility has substitute canes and wheelchairs for visitors to use. Compl. ¶ 19. Even though Defendant Rohan rejected Plaintiff's request for a substitute cane on December 9, 2017, there are no facts that would suggest that Defendants had a policy of denying substitute canes to visitors or that Plaintiff would be denied a substitute cane on a return visit. Accordingly, Plaintiff does not have standing to seek injunctive relief against Defendants. For the same reasons, Plaintiff lacks standing to seek declaratory relief. *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement"). Accordingly, Plaintiff's claims for injunctive relief should be dismissed under Rule 12(b)(1).

2. **Insufficient Service**

Defendants charge that Plaintiff's failure to properly serve them independently merits dismissal under both Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(5) for insufficient service of process. Because the presence or absence of personal jurisdiction here is solely dependent on the allegation of failure of service, I will analyze this

---

motion to dismiss. *See Wright*, 831 F.3d at 79-80 (finding improper district court's granting summary judgment based on failure to plead facts regarding engaging in the interactive process); *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000) (listing burden for employee plaintiff for Title I claim); *Goonan v. Federal Reserve Bank*, 916 F. Supp. 2d 470, 480 (S.D.N.Y. 2013) (looking at what constitutes a reasonable accommodation for an employer). To the extent that a failure to alert Defendants of the need for an accommodation may show that Defendants did not have a duty to provide a reasonable accommodation, that goes to the merits of the Title II claim. To the extent that Defendants are arguing that failure to engage in the interactive process shows that Plaintiff has no intention of returning to Sullivan Correctional Facility, that is merely another version of the standing argument discussed above.

14

issue under 12(b)(5). (*See* ECF 21 at 7). To be sufficient, service must comply with Federal Rule of Civil Procedure 4. *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Under Rule 4(e), an individual defendant may be served by delivering a copy of the summons and complaint (i) personally to the defendant, (ii) to an individual who resides at the defendant's "dwelling or usual place of abode," or (iii) to an agent of the defendant authorized to receive such process. Fed. R. Civ. P. 4(e)(2)(A)-(C). In the alternative, the plaintiff may also effectuate service by any means authorized by the state law of "the state where the district court is located or where service is made," here New York. Fed. R. Civ. P. 4(e)(1).

Under New York law, in addition to personal service, service can be effected by delivering the summons and complaint to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and then mailing the summons to the last known residence or place of business. N.Y. C.P.L.R. § 308(2). New York law permits service on a state agency and a state officer sued in their official capacity by personal service upon the agency's "chief executive officer" or the named officer defendant. N.Y. C.P.L.R. § 307. Alternatively, service by certified mail for a state agency or a state officer sued in their official capacity is permissible if the envelope is marked "URGENT LEGAL MAIL" in capital letters and is accompanied by serving the summons on a state assistant attorney-general. *Id*.

Plaintiff's initial proofs of service for all five defendants show that they were only served by first-class certified mail. (ECF 7 – ECF 10). Plaintiff subsequently confirmed that he attempted service through certified mail. (ECF 12). As described above, certified mail alone is not a valid method of service of process under either Rule 4 or New York law. *See Murray v. Thomason*,

15

No. 17-CV-7004 (VB), 2018 WL 5113955, at *5 (S.D.N.Y. Oct. 19, 2018).

After Defendants filed their motions to dismiss, Plaintiff submitted new proofs of service. (ECF 25 – ECF 29). In three of the proofs of service,[13] Plaintiff left blank the method of service used. (ECF 25, ECF 27, ECF 29). Without this information, the Court cannot determine if proper service was carried out. For the proofs of service for Defendants City of New York and Officer Rohan, the declarant states that the summons was delivered to a Puja Nag of the Attorney General's Office. (ECF 26, ECF 28, ECF 30). The record fails to indicate whether "Puja Nag" is an assistant attorney-general, whether the mailed summons was addressed to the "chief executive officer" of the agency or to Officer Rohan, or whether the mailed envelope contained the words "URGENT LEGAL MAIL." Accordingly, based on the information on the record, Plaintiff has not carried his burden of showing he executed proper service on Defendants.[14]

Despite failure to timely effect service, the Court may extend the time for proper service upon a showing by Plaintiff of "good cause for the failure." Fed. R. Civ. P. 4(m). Likewise, the Court "has discretion to grant an extension to serve process even absent a showing of good cause." *DeLuca*, 695 F. Supp. 2d at 67. Here, re-pleading would likely not be barred by the statute of limitations.[15] Nor would there be prejudice to Defendants, who have been on notice

---

[13] These were for service on Defendants Keyser, Annucci, and Sipple.

[14] Plaintiff argues in a sur-reply that Defendants' motion to dismiss should be denied for untimeliness because, he asserts, the motion to dismiss was filed after the filing of Defendants' Answer. (ECF 35 at 6). In addition to sur-replies being prohibited by both the undersigned's and Judge Daniels's Individual Practices, Plaintiff's assertion is incorrect. On May 6, 2019, upon Defendants' request, I extended Defendants' time to respond to the complaint to May 21, 2019. (ECF 11). On May 16, 2019, I granted Defendants a further extension of time until June 6, 2019 to respond to the complaint. (ECF 14). Defendants filed their motion to dismiss on June 5, 2019, ECF 20, and have not filed an Answer in this case. Accordingly, Defendants have not waived their right to file their motion to dismiss.

[15] Courts in this District have treated Title II ADA claims as containing a three-year statute of limitations. *See, e.g.,*

of this case and have filed the pending motion to dismiss. Although this would support granting an extension of time for Plaintiff to effect proper service, I recommend that the motion to dismiss be granted on other grounds with leave to file an amended complaint. As a result, I recommend that Defendants' Rule 12(b)(5) motion be denied without prejudice as moot.

C. **<u>Leave to Replead</u>**

Under Federal Rule of Civil Procedure 15(a), leave to amend should be "freely given when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). Although it is within the Court's discretion, leave to amend is not appropriate where there exists undue delay or futility of amendment. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). As shown above, it would be futile to amend claims for monetary damages against Defendants Keyser, Sipple, Annucci, and Rohan in their individual capacity. It would also be futile to amend claims as to the refusal to permit use of Plaintiff's handmade cane.

The claim for monetary damages for the refusal to provide the substitute cane, however, failed due to the absence of any facts showing discriminatory animus or a violation of a fundamental right. Plaintiff only alleged that Defendant Rohan refused to issue the substitute cane and spoke to Plaintiff in an "arrogant" tone. Compl. ¶ 19. It is therefore plausible that Plaintiff could allege additional facts regarding the failure to provide a substitute cane that would show a discriminatory intent and/or a constitutional violation.[16] It is also plausible that

---

*Volpe v. New York City Dep't of Educ.*, 195 F. Supp. 3d 582, 594 (S.D.N.Y. 2016); *Keitt*, 882 F. Supp. 2d at 451. The events at issue in Plaintiff's complaint all occurred on December 9, 2017. Compl. ¶ 18.

[16] This is not to say that the Title II claim will hold up on summary judgment upon analysis of whether such discriminatory intent actually existed or whether the denial of a cane constituted a denial of a reasonable accommodation. A further development of the record to make such a determination is not proper, however, at the motion to dismiss stage.

Plaintiff could plead additional facts that would support standing for his claim of injunctive relief. In light of the liberal policy towards amendment, especially for *pro se* litigants, Plaintiff should be granted leave to amend as to the refusal to issue a substitute cane. *See Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (noting a *pro se* plaintiff should be given at least one opportunity to amend if "a liberal reading of the complaint gives any indication that a valid claim might be stated").

IV. <u>Conclusion</u>

For the foregoing reasons, I recommend that Defendants' motion to dismiss be granted. Specifically, I recommend that the complaint be dismissed in its entirety under Rule 12(b)(1) for lack of standing to seek equitable relief and Rule 12(b)(6) for failure to state a claim for monetary damages, with leave to replead. I further recommend that the motion to dismiss on Rule 12(b)(5) grounds be denied as moot.

V. <u>Objections</u>

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable George B. Daniels, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Daniels.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140,

155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983). If Plaintiff wishes to review, but does not have access to, cases cited herein that are reported on Westlaw, he should request copies from Defendants. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

The Clerk of Court is respectfully requested to mail a copy of this Order to the *pro se* Plaintiff at the address listed on the docket.

Respectfully submitted,

*s/ Ona T. Wang*

Dated: January 17, 2020
New York, New York

**Ona T. Wang**
United States Magistrate Judge